**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY VANCE, | CIVIL ACTION 1:14-cv-03641 |
| Plaintiff, | |
| v. | COMPLAINT |
| PORTFOLIO RECOVERY ASSOCIATES, LLC and FREEDMAN ANSELMO LINDBERG, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT FOR RELIEF PURSUANT**
**TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, GREGORY VANCE ("Gregory"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, PORTFOLIO RECOVERY ASSOCIATES, LLC and FREEDMAN ANSELMO LINDBERG, LLC (collectively "Defendants"), as follows:

**NATURE OF THE ACTION**

1. Gregory brings this action for damages for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et. seq. ("ICFA").

**JURISDICTION AND VENUE**

2. This action arises under, and is brought pursuant to, the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k(d), 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

## PARTIES

4. Gregory is a natural person who resides in the Northern District of Illinois and is a "consumer," as defined by the FDCPA, 15 U.S.C. §1692a(3).

5. Gregory is also a disabled veteran who suffered a stroke in 2006 that left him physically and mentally disabled.

### Portfolio Recovery Associates, LLC

6. Defendant Portfolio Recovery Associates, LLC ("PRA") is a Delaware limited liability company with its principal place of business at 120 Corporate Blvd., Suite 100, Norfolk, Virginia 23502. PRA conducts and transacts business in Illinois. PRA's Illinois registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 602703.

7. PRA is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

8. PRA then seeks to enforce the alleged debts against the consumers through lawsuits.

9. The mails and telephone system are used in connection with the prosecution of the PRA lawsuits.

10. PRA is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6).

### Freedman Anselmo Lindberg, LLC

11. Defendant Freedman Anselmo Lindberg, LLC ("Freedman") is an Illinois limited liability company with its principal place of business at 1771 West Diehl Road, Suite 150,

Naperville, Illinois 60563. Freedman's registered agent in Illinois is Thomas J. Anselmo, located at 1771 West Diehl Road, Suite 150, Naperville, Illinois 60563.

12. Freedman is a "creditor's rights" law firm that "concentrates their practice in legal collections and recovery …" See http://www.fal-illinois.com/"About Us."

13. Freedman is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6).

## FACTS SUPPORTING CAUSE OF ACTION

14. Defendants have been attempting to collect from Gregory a debt alleged to have been originally owned by General Electric Capital Corporation, claimed to have been incurred for personal, family, or household purposes; not for business purposes ("GE, or GE account").

15. On or about May 9, 2013, PRA, through its attorney, Freedman, filed a one page complaint in the Circuit Court of Cook County, Illinois against Gregory. The case was captioned *Portfolio Recovery Associates, LLC v. Gregory Vance*, case number 2013 M1 128535 ("collection case"). *See* Exhibit A, a true and correct copy of the collection case complaint ("complaint").

16. In the complaint, PRA alleges that it purchased and now owns the GE account. The complaint was solely supported by the affidavit of David L. Knickerbocker ("Knickerbocker affidavit"), a purported employee of PRA, dated March 20, 2013. *See* Exhibit A-1, a true and correct copy of the Knickerbocker affidavit.

## The Debt Buying Industry

17. PRA is a debt buyer. Debt buying is the practice of purchasing charged-off debts from debt originators, or other debt buyers. These debts are purchased in bulk and are usually credit card debts.

18. The debts sold are typically bundled into portfolios because bundling accounts into portfolios reduces the transactions costs of exchange. *See* Federal Trade Commission, The Structure and Practices of the Debt Buying Industry, January 2013, available at http://www.ftc.gov/reports/structure-practices-debt-buying-industry (last visited March 5, 2014) ("FTC Debt Buyer Report").

19. When purchased, these bundled account portfolios are transferred via electronic data files that contain only a few data elements from the original account records. When printed out, the electronic evidence of the sale ("data file"), consists of one line per consumer.

20. The typical data file contains the original account number, the name of the consumer, the address of the consumer, the last balance purportedly owed, the date of the last payment, and the date that the account was charged-off. *Id*. at pp. 34-35.

21. Debt buyers generally do not obtain the original account records (the day-to-day transactions on the account that are generally made at or near the time of each transaction, in the normal course of business) related to the purchased debts. For most portfolios, buyers do not receive any documents at the time of purchase. Only a small percentage of portfolios include documents such as account statements or the terms and conditions of credit. *Id*. at p. iii.

22. The data files obtained by debt buyers are not the original account records that were created in the regular course of business by the credit originator—they are created prior to the sale of a portfolio of charged-off debts. They are created for sale to a third party, and are not created in the regular course of servicing the credit card account.

23. Furthermore, debt sales are typically "as-is," with limited or no ability to obtain additional information from the original creditor. *See* FTC Debt Buyer Report at p. 25.

24. Where different debt buyers enter into purchase and sale agreements with the same seller, the structure, organization, and phrasing of these agreements are virtually identical. *Id.* at pp. 24-25.

25. Defendants relied on the information that PRA apparently obtained from GE (the data file) when they filed the collection case.[1]

26. However, Defendants had absolutely no assurance that the information they received was accurate because, on information and belief, GE (or GE's successor in interest) sold its debts to PRA in "as-is" condition.

27. The information on which Defendants relied to file the state court action would not be considered satisfactory evidence if submitted to court. A document is not admissible as a "business record" under Illinois law if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness …" Illinois R. Evid. 803(6).

28. It is common practice in the industry to purchase debts without obtaining original account information due to the time and cost of obtaining such documentation.

**Pattern and Practice in State Court Collection Actions**

29. Defendants routinely file state court collection actions with no more evidence of the debt in question than the single line data file described above.

30. Defendants know that the information on which they rely to file the state court collection actions will not be supported with adequate evidence, yet PRA is not willing or not able to obtain such evidence.

31. Usually when Defendants file a collection action they obtain a default judgment against the consumer.

---

[1] It is actually unclear from the complaint and Knickerbocker affidavit whether PRA obtained the data file in question directly from GE, or from a subsequent debt-buyer. Regardless, if the GE account was sold, it was done so in the manner described above; any subsequent buyer would have received the one line data file "as-is."

32. Upon information and belief, the default rate in such lawsuits may be as high as ninety percent.

33. The default rate is so high in the collection actions because Defendants serve the consumer with a complaint and affidavit falsely alleging PRA's ability to prove the information contained therein.

34. The purpose of such affidavits is to deceive the consumer into believing that PRA can prove the case at trial and to intimidate the consumer into paying the amount claimed or settling the account based on the amount claimed.

35. The collection case affidavits are deceptive because they appear to be based on a review of "business records" transferred to PRA from the original creditor. *See* Exhibit A-1. In truth, the affidavits are created from the limited information contained in the one line data file that PRA allegedly purchased "as-is."

36. By submitting such an affidavit to the consumer, while concealing documents in which the alleged account seller effectively disclaims the accuracy of its records and information, Defendants perpetrate a fraud on the consumer.

37. Accordingly, the consumer is discouraged from defending the lawsuit or challenging the allegations contained in the complaint and affidavit.

38. Defendants actively conceal the nature of their defective standing; an unsophisticated consumer would not know that these "as-is" purchase agreements exist.

39. An unsophisticated consumer would not be aware of the elements of the business records exception to the rule against hearsay.

40. When Defendants file a collection action against a consumer, they implicitly represent that the allegations and factual contentions contained in the complaint and affidavit are backed by evidentiary support. Federal Rule of Civil Procedure 11(B)(3) states:

> Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> []
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery
>
> Fed R. Civ. Proc. 11(B)(3).

41. In these *ex parte* collection actions Defendants do not disclose to the court that they have not conducted a reasonable investigation into their claims or that they would never have presented evidence to support those claims. *See* Comment 14 to Rule 3.3 of the Illinois Rules of Professional conduct, which states: "… in any *ex parte* proceeding … [t]he lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision."

42. Defendants do not conduct a reasonable investigation into a debt's existence in the collection actions they file; rather Defendants intend to obtain a default judgment against the consumer or settlement, by falsely representing to the consumer and the court, through the filing of the complaint and affidavit, that they have evidence to support the claims stated therein.

43. This practice amounts to an unfair, deceptive and improper use of the court system in connection with the collection of a debt.

44. Once the default judgment is entered Defendants can proceed to garnishment regardless of whether they could have proved their case at trial.

45. Defendants routinely voluntarily dismiss cases where the consumer appears before the court to defend the action in order to protect their business model and avoid losing at trial.

**Collection Case**

46. Gregory was served with the summons and complaint in the collection case in July, 2013.

47. The Knickerbocker affidavit indicates that Knickerbocker reviewed business records of "the Account Assignee [PRA] and those records transferred to Account Assignee from General Electric Capital Corp/Care Credit," before executing the affidavit. *See* Exhibit A-1 at ¶2.

48. The Knickerbocker affidavit further states, "According to the business records, which are maintained in the ordinary course of business, the account, and all proceeds of the account are now owned by the Account Assignee, all of the Account Seller's interest in such account having been sold, assigned and transferred by the Account Seller on 12/28/2011." *See* Exhibit A-1 at ¶3.

49. The Knickerbocker affidavit implies that the "records transferred to Account Assignee from General Electric Capital Corp/Care Credit" are business records from the original creditor, kept in the ordinary course of business.

50. As stated in paragraphs 21 and 22 above, any "records transferred" to PRA were created for the purpose of selling the debt portfolio that allegedly contained the GE account (the electronic data file); not "made at or near the time" of the event, as required by the Illinois Rules of Evidence 803(6).

51. On August 1, 2013, Gregory filed a *pro se* appearance in the collection case and the case was set on the trial call for August 27, 2013.[2] *See* Exhibit B, a true and correct copy of Gregory's appearance.

52. On August 27, 2013, Gregory arrived at the courthouse, expecting to be heard by the Judge.

53. Before the collection case was called, an attorney for PRA ("Freedman attorney") asked to speak with Gregory in the hallway outside the courtroom.

54. The Freedman attorney told Gregory that he was not going to pursue the collection case against Gregory due to Gregory's status as a disabled veteran, and that the case would be dismissed, or that Gregory would receive notice of the next court date.

55. Gregory did not step in front of the Judge at that time.

56. Based on a review of the court file, an "Agreed" Order was entered on that date, setting the case for status on October 29, 2013. The Order that was entered was a modified version of a proposed order that was previously drafted by Freedman, which would have defaulted Gregory in the collection case. *See* Exhibit C, a true and correct copy of the collection case order dated August 27, 2013.

57. Gregory did not receive any court order at that time, nor was he ever given notice of the October 29, 2013 status date.

58. On the status date of October 29, 2013, PRA was granted a default judgment in the collection case ("default judgment"). *See* Exhibit D, a true and correct copy of the collection case Order dated October 29, 2013.

---

[2] Since his stroke in 2006, Gregory requires assistance in any type of strenuous activity. His wife Bernetta Coleman-Vance acts as his care-taker and assisted Gregory in filing his appearance at the courthouse.

59. But for the representations made by the Freedman attorney, Gregory would have appeared in the collection case to be heard by the Judge, as he intended to do on August 27, 2013.

60. Gregory, as a non-attorney, reasonably relied on the Freedman attorney's representations.

61. Gregory had no reason to believe that the Freedman attorney was misrepresenting the nature of legal action intended to be taken.

62. When Gregory became aware of the default judgment entered against him, he sought the assistance of counsel and retained Sulaiman Law Group ("Counsel") to contest the default judgment and defend the collection case.

63. On December 2, 2013, Gregory, through Counsel, filed a motion to vacate the default judgment. *See* Exhibit E, a true and correct copy of Gregory's Motion to Vacate Default Judgment and for Leave to File an Appearance and to Answer or Otherwise Plead.

64. On December 12, 2013, the default judgment was vacated, Counsel was granted leave to file an appearance, and the collection case was set for trial on February 11, 2014. *See* Group Exhibit F, a true and correct copy of Counsel's appearance and the collection case Order dated December 12, 2013.

65. Accordingly, Counsel advised Gregory to be ready to stand trial on February 11, 2014.

66. On the date of trial, February 11, 2014, PRA voluntarily dismissed the collection case against Gregory. *See* Exhibit G, a true and correct copy of the collection case Order entered February 11, 2014.

67. It can be reasonably inferred that Defendants voluntarily dismissed the collection case because Defendants knew that they could not demonstrate the accuracy of the information contained in the complaint, or that PRA even owned the GE account at all.

10

68. The Illinois Code of Civil Procedure requires that a plaintiff provide notice to the defendant when the plaintiff intends to voluntarily dismiss its case. See 735 ILCS 5/2-1009.

69. Defendants never provided Gregory with formal notice of their intention to dismiss the collection case—notice was not provided in writing, no motion was filed with the court, and Counsel did not receive even verbal notice until the day of trial.

70. Even if Defendants had intended to take the collection case to trial, they would have been unable to prevail at trial due to their lack of evidence demonstrating PRA's alleged ownership of the GE account described above.

71. By operation of law, PRA has one year or until the statute of limitations expires, whichever is longer, to re-file its case against Gregory.

72. Gregory is left to wonder when or if he will be served with another summons containing another deceptive affidavit and baseless complaint.

73. This uncertainty has caused Gregory significant stress and emotional distress.

74. Gregory was harmed by Defendants' unfair and deceptive practices because he had to spend time and energy defending against PRA's frivolous lawsuit; the collection case was particularly burdensome due to Gregory's poor state of health.

75. Gregory was further harmed by Defendants' unfair and deceptive practices, as he incurred costs defending against PRA's frivolous lawsuit, including retaining Counsel.

## COUNT I – VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT AGAINST ALL DEFENDANTS

76. Gregory repeats and realleges paragraphs 1 through 75 as though fully set forth herein.

77. PRA is liable for the acts of its attorney and agent, Freedman.

78. PRA's conduct was misleading and unfair to the unsophisticated consumer; Gregory reasonably relied on the Freedman attorney's representation that a judgment would not be sought in the collection case based on his disabled status.

79. Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; PRA's filing of the collection case, while knowing that it could not prevail at trial, and would dismiss the collection case if challenged, served only to harass Gregory in an attempt to improperly collect on the GE account. Moreover, Defendants' conduct of representing to Gregory that they would not pursue the collection case and subsequently seeking a default judgment against him served only to harass Gregory in an attempt to improperly collect on the GE account.

80. Defendants violated 15 U.S.C. §1692e by using a false, deceptive, or misleading representation or means in connection with the collection of any debt when they represented to Gregory that PRA would dismiss the collection case, or that Gregory would receive notice of any court date subsequent to the August 27, 2013 hearing; as a result of this false representation, PRA was able to obtain a default judgment, as Gregory was under the impression that PRA was not intending to pursue the collection case and had no notice of the next status date.

81. Furthermore, Defendants violated 15 U.S.C. §1692e by using a false, deceptive, or misleading representation or means in connection with the collection of any debt when they caused the complaint and Knickerbocker affidavit to be served on Gregory; the complaint and Knickerbocker affidavit are inherently deceptive, false, and misleading because they purport to be based on trustworthy business records, when in fact, they are based on unverified information that PRA allegedly acquired "as-is." The filing of the collection case was also false and

deceptive because Defendants knew they could not demonstrate ownership of the GE account. As discussed above, the false Knickerbocker affidavit was intended to deceive and intimidate Gregory into paying PRA on the GE account by misrepresenting the evidentiary support for the claims asserted therein, including that PRA purchased the GE account and the balance due.

82. Defendants violated 15 U.S.C. §1692e(2) by using a false representation as to the legal status of any debt when they represented to Gregory that PRA would not pursue a judgment against him; instead of dismissing the collection case, PRA sought, and was granted a default judgment against Gregory. Moreover, PRA could not demonstrate ownership of the GE account; even if PRA did own the GE account, it would have no way of proving its ownership of the GE account or determining the amount claimed. Thus, PRA's assertions as to its ownership and knowledge of the GE account information set forth in the complaint and Knickerbocker affidavit were false representations as to the status of the GE account.

83. Defendants violated 15 U.S.C. §1692e(10) by using a false representation or deceptive means to collect or attempt to collect any debt when they represented to Gregory that PRA would not pursue a judgment against him; by virtue of the false representation, PRA was able to obtain a default judgment in the collection case, as Gregory relied on Defendants' representations that PRA was not intending to pursue the collection case.

84. Furthermore, PRA violated 15 U.S.C. §1692e(10) by using a false representation or deceptive means in connection with the collection of any debt when it caused the complaint and Knickerbocker affidavit to be served on Gregory; the complaint and Knickerbocker affidavit are inherently deceptive because they purport to be based on trustworthy business records, when in fact, they are based on unverified information that PRA acquired (if at all) "as-is."

85. Defendants violated 15 U.S.C. §1692e(15) by representing that documents are not legal process forms or do not require action by the consumer when they represented to Gregory that he did not need to appear or take further action in the collection case; but for this misrepresentation, Gregory would have appeared to defend the collection case, thus avoiding a default judgment being entered against him.

86. Defendants violated 15 U.S.C. §1692(f) by using unfair means to collect or attempt to collect any debt; PRA's filing of the collection case, while knowing that it could not prevail at trial, was unfair because Gregory had to spend time and money defending against a frivolous lawsuit. Moreover, Defendants' pattern and practice of filing collection actions against consumers, without conducting a reasonable investigation into their claims or disclosing their lack of evidence, with the intent of obtaining a default judgment, amounts to an unfair debt collection practice effectuated through the courts. This practice is unfair to the consumer and against public policy.

87. Defendants' conduct represents a material violation of the FDCPA because they effectively represent to consumers that they can prove ownership of the alleged debt when they cannot, and in Gregory's case, Defendants told Gregory that they would not pursue the collection case.

88. It is Defendants' regular business practice to file claims against consumers even though they cannot verify the data in their complaints.

89. As plead in paragraphs 72 through 75 above, Gregory had suffered actual damages as a direct result of PRA's conduct and deceptive actions.

90. As a result of the above violations of the FDCPA, Gregory is entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff, GREGORY VANCE, respectfully requests that this Honorable

Court enter judgment in his favor as follows:

a.  declaring that the practices complained of herein are unlawful and violate the
    aforementioned statutes and regulations;

b.  awarding Plaintiff statutory and actual damages, in an amount to be determined at trial,
    for the underlying FDCPA violations;

c.  ordering the deletion of all adverse credit reporting related to the alleged debt;

d.  awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C.
    §1692k; and

e.  awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT II - VIOLATION OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT ("ICFA") AGAINST PRA**

91. Gregory restates and realleges paragraphs 1 through 75 as though fully set forth herein.

92. PRA is liable for the acts of its attorney and agent, Freedman.

93. PRA violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by

using fraud, deception, and misrepresentation in its efforts to collect an unverified debt from

Gregory.

94. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or
> practices, including but not limited to the use or employment of
> any deception, fraud, false pretense, false promise,
> misrepresentation or the concealment, suppression or omission of
> any material fact, with intent that others rely upon the
> concealment, suppression or omission of such material fact … in
> the conduct of any trade or commerce are hereby declared
> unlawful whether any person has in fact been misled, deceived or
> damaged thereby.
>
> 815 ILCS 505/2.

95. Gregory is a consumer as defined by ICFA, 815 ILCS 505/1(e).

96. PRA's attempt to collect the GE account is part of the conduct of any trade or commerce as defined by ICFA, 815 ILCS 505/1(f).

97. PRA's pursuit of the default judgment in the collection case, despite the representation that it would not do so, represents the use of deception, fraud and false pretense in an attempt to improperly collect on the GE account.

98. Furthermore, PRA's active participation in the collection case, while knowing that it could not prevail at trial and did not intend to proceed to trial, was intended only to deceive Gregory into thinking he would have to pay PRA to avoid a judgment against him.

99. PRA's active concealment of its lack of evidence to support its claims in the collection case represents a material misrepresentation, made in the conduct of trade or commerce.

100. PRA intended that Gregory rely on its misrepresentations.

101. Gregory did rely on PRA's misrepresentations.

102. ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

> 815 ILCS 505/10a.

103. As a direct result of PRA's false statements, Gregory has suffered actual damages.

104. By virtue of his reliance on PRA's false representations outside the courtroom on August 27, 2013, Gregory did not believe that he needed to appear in court to avoid having a default judgment entered against him.

105. Consequently, PRA was able to obtain a default judgment, as Gregory did not appear to defend the collection case.

106. As plead in paragraphs 73 through 75 above, Gregory was further harmed by PRA's false representations, as he spent time, energy and money defending the collection case.

107. Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which the PRA routinely engages as part of its business model.

108. An award of punitive damages is appropriate because PRA's conduct described above was willful and wanton, and showed a reckless disregard for the protections afforded by ICFA, and Gregory's rights thereunder.

109. As such, Gregory is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, GREGORY VANCE, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff actual damages and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding the Plaintiff costs and reasonable attorney fees; and

e. awarding any other relief as this Honorable Court deems just and appropriate.


Dated: May 18, 2014                          Respectfully Submitted,

                                             /s/ Daniel J. McGarry
                                             Mathew H. Hector, Esq. ARDC#6283058
                                             Daniel J. McGarry, Esq. ARDC#6309647
                                             Counsel for Plaintiff
                                             Sulaiman Law Group, LTD
                                             900 Jorie Blvd, Ste 150
                                             Oak Brook, IL 60523
                                             Phone (630)575-8181
                                             Fax: (630)575-8188