IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY VANCE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 14 C 3641 ) ) Judge Joan H. Lefkow |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, and FREEDMAN ANSELMO LINDBERG, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## **OPINION & ORDER**

Gregory Vance filed a two-count complaint against Portfolio Recovery Associates, LLC (PRA) and Freedman, Anselmo, Lindberg, LLC, a law firm, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA) (count I), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (ICFA) (count II). (Dkt. 1.) Defendants have moved for summary judgment on both counts. (Dkt. 47.) For the reasons stated below, defendants' motion for summary judgment is granted as to the FDCPA claim. The court declines to exercise supplemental jurisdiction over the ICFA claim and dismisses without prejudice to refiling in an Illinois court.[1]

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. § 1692k(d). Venue is proper under 28 U.S.C. § 1391(b). In their briefing, the parties do not contest that Vance is a consumer and that PRA and the Freedman law firm are debt collectors under the FDCPA.

I.  **Background**[2]

Vance opened a Care Credit/GE Capital Retail Bank account on May 24, 2010. (Dkt. 46, Defendants' Local Rule 56.1 Statement of Facts (Defs.' LR 56.1) ¶ 1, Ex. A at PRA00143.) The account became delinquent on May 12, 2011 and was charged off on December 9, 2011. (*Id.*) PRA, which is in the business of collecting on unpaid, outstanding account balances, purchased the account around December 2011. (*Id.*, Ex. B ¶¶ 7, 12). PRA unsuccessfully tried to collect the debt directly from Vance. (*Id.* ¶¶ 6–8, 10). At some point Vance told plaintiffs that he did not have enough money to pay the debt and that he had some social security income, although it appears that there may have been other household income or assets as well. (*See, e.g.*, *id.*, Ex. A at PRA00150–51 (noting potential of benefit payments in June 19, 2012 account notes)). On May 9, 2013, PRA filed suit in the Circuit Court of Cook County to collect on the debt. (*Id.* ¶ 9.)

After being served with the summons and complaint, Vance ventured to court where he spoke with a clerk who informed him that his appearance fee would be waived. (*Id.*, Ex. C, Vance Tr. at 26:12–24, 27:6–13.) At this point, Vance had not engaged counsel and he may have thought that the waiver of his appearance fee meant that the case was over. (*Id.* at 26:14–20 ("I thought I had got cleared when I filed that paper because when I went there to see the clerk, I told them I didn't have no money to pay them. He said, 'Well, that's all right, just do that and you ain't got to worry about it,' but I had to go to court.").) Whatever his understanding, Vance apparently was notified to attend court on August 27, 2013, and he did so. (*Id.* at 27:23–28:6.)

---

[2] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

There he spoke with Michael Polk, an attorney from the law firm representing PRA in its suit against Vance. (*Id.* ¶¶ 45–47.) The two had a conversation that was cordial, professional, and pleasant. (*Id.* ¶ 48.) When pressed to recall this conversation at his deposition, Vance testified that he told Polk that he was a disabled veteran and without funds to pay the money he owed. Polk, whom Vance said is also a veteran, told Vance, "Well, since you're a veteran then, I'm going to go ahead on and we'll write this off." (*Id.*, Ex. C, Vance Tr. at 37:3–16.) When asked what words Polk used, Vance clarified that Polk said "[h]e would excuse me. He didn't say 'write it off,' but that's what I took from it." (*Id.* at 37:22–24.) When asked once again about the words used, he said Polk stated, "I'm going to excuse you from it." (*Id.* at 38:1–6.) Following this statement, Vance testified that Polk said, "You can go on home, and if we send you a letter in the mail, come back to court. If not, you know, don't even worry about it." (*Id.* at 38:21–39:2.)

Later in the deposition, Vance testified that what Polk told him was that "[e]verything's going to be all right." (*Id.* at 61:13–18.) He admitted that he did not remember what Polk said, but he interpreted whatever Polk said as "[t]hat the bill was going to be wiped out." (*Id.* at 61:19–62:11.) Vance also admitted that he may have misunderstood what Polk told him but Polk was "like, 'Hey you ain't going to get nothing in the mail, but if you do get something in the mail, come.'" (*Id.* at 62:12–18.) Vance also testified that if he received a notice that he understood that he needed to come to court and admitted that he probably did receive a notice. (*Id.* ¶ 38; *see also id.*, Ex. C, Vance Tr. at 62:21–63:5.)

Polk, in an affidavit, states that he had an independent recollection of the conversation. (*Id.* ¶ 46.) Polk states that he never told Vance that he was not going to pursue the collection lawsuit or that Vance would receive notice of the next court date. Based on his practice, he

3

would have arranged to have a copy of any order sent to Vance if Vance did not receive a copy of the order in court. (*Id.* ¶¶ 46–51.)

Vance could not recall whether he took anything with him from court on August 27, 2013 (*id.* at 39:3–6), but he brought a copy of the court's order to his deposition. The (agreed) order set the case for status on October 29, 2013. (*See id.* at 39:3–40:5.) Vance testified that he understood the order to mean that the case was set for October 29, 2013. (*Id.* at 40:6–16.) The Circuit Court of Cook County case docket reflects that two days after the August 27, 2013 status a notice postcard was generated by the clerk's office for mailing to Vance. (*Id.* ¶ 53; *see also id.*, Ex. G at 3.) Vance denies that he received the postcard notice.[3]

Vance did not attend the October 29, 2013 status and default judgment was entered against him. (*See id.*, Ex. G at 3; *see also* dkt. 1 (Compl.), Ex. D.) In response to questioning from his attorney, Vance testified that at some point following his August 27, 2013 conversation with Polk he did know that he was to go back to court, but at that point he did not know that a judgment had been entered against him. (*Id.* at 101:21–102:9.) The docket reflects that a postcard was generated on October 31, 2013 to inform Vance of the default judgment. (*Id.*, Ex. G at 3.) On December 12, 2013, the default judgment was vacated on the motion of Vance's newly-engaged counsel, and the case was set for trial on February 11, 2014. (*Id.*, Ex. G at 4; Compl., Ex. F at 2.)

---

[3] Vance denies that he received notice of the status either from the copy of the order (which Vance had in his possession when he showed up at his deposition) or from the notice provided by the state court. He cites his own deposition testimony in support. (*see* dkt. 59, Plaintiff's Resp. LR 56.1 (Pl.'s Resp. 56.1) ¶ 53 (citing Defs.' LR 56.1, Ex. C, Vance Tr. at 38:23–39:2 ("Yeah, that was the end. He said, 'You can go on home, and if we send you a letter in the mail, come back to court. If not, you know, don't even worry about it.'")).) At best, one could infer that Vance took the order home from court but believed that he did not have to return to court because Polk told him he should come back only if Polk sent him a letter.

PRA's account notes reflect that on January 6, 2014, a custodian of records request form was submitted for the February 11, 2014 trial date, but on February 5, 2014, PRA gave its counsel "authority to mutually dismiss [the] case due to difficult Judge and def[endant's] being on disability." (Defs.' LR 56.1, Ex. A at PRA00148.) On February 11, 2014, an order was entered dismissing the case without prejudice by agreement of the parties and PRA was ordered to reimburse Vance for his costs. (Compl., Ex. G.)

## II.     Legal Standard

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is

factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

### III. Analysis

#### A. Fair Debt Collection Practices Act

The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In his complaint, Vance argues that defendants' conduct in attempting to collect Vance's debt violated 15 U.S.C. §§ 1692d, 1692e,[4] and 1692f. In relevant part, these provisions provide the following:

- "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

- "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) The false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . . (15) The false representation or implication that documents are not legal process forms or do not require action by the consumer." *Id.* § 1692e.

- "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

Violation of section 1692(e)(15) seems to be the best fit under the facts, but Vance contends that the same conduct violated each of these prohibitions. His theories are two: (1)

---
[4] In addition to alleging a violation of § 1692e's general prohibition on false, deceptive, and misleading representations and means, Vance alleges that defendants violated three of its subsections—1692e(2), (10), and (15). (Compl. ¶¶ 82–85.)

defendants sued knowing that they would never go to trial and with no intention to prove their collection case (*see, e.g.*, dkt. 58 at 1, 3, 5, 6, 11) and (2) Polk misrepresented to Vance during their August 27, 2013 conversation that defendants would not pursue the collection case (*see, e.g.*, *id.* at 2, 3–5, 12).

### 1. Defendants Never Intended To Try Vance's Collection Case

Variations of this argument have become commonplace in the Northern District of Illinois, in no small part due to Vance's counsel's frequent litigation of nearly identical cases. *See, e.g.*, *Juarez* v. *Portfolio Recovery Assocs., LLC*, No. 14 C 5928, 2015 WL 4764226 (N.D. Ill. Aug. 12, 2015); *Lena* v. *Cach, LLC*, No. 14 C 1805, 2015 WL 4692443 (N.D. Ill. Aug. 6, 2015); *Pantoja* v. *Portfolio Recovery Assocs., LLC*, No. 13 C 7654, 2015 WL 1396609 (N.D. Ill. Mar. 24, 2009); *St. John* v. *CACH, LLC*, No. 14 C 733, 2014 WL 3377354 (N.D. Ill. July 8, 2014). Decision on dispositive motions in these cases generally hold that the FDCPA does not police the adequacy of state court filings and, therefore, "[a]ny attack on the State Court Complaint should occur in state court." *Pantoja*, 2015 WL 1396609 at *3. These cases serve as defendants' primary rationale for arguing that they are entitled to summary judgment. Vance, however, argues they are distinguishable and that it is a deceptive practice under the FDCPA for a debt collector to file a collection case not intending to proceed to trial. (Dkt. 58 at 6.)

A debt collector's decision to proceed in state court does not insulate its conduct from the FDCPA. Nevertheless, a court in this district has already rejected plaintiff's theory that a debt collector who files a lawsuit never intending to prove the case violates the FDCPA. In *Juarez*, the court inferred that the plaintiff's argument "amount[ed] to an unfair debt collection practice effectuated through the courts that is unfair to the consumer and against public policy." 2015

7

WL 4764226, at *3.[5] The issue, therefore, was whether the debt collector filed its complaint "in good faith with the belief that it had legal authority to collect on the debt." *Id.* The court reasoned,

> A debt collector that files suit expecting in good faith to prove its claim, even if he does not ultimately prevail, will not be liable under the FDCPA, while a plaintiff that sues in bad faith may be in violation of the FDCPA. In determining whether a debt collector has filed suit in good faith, courts have distinguished between claims a debt collector merely chooses not to prove and claims that a debt collector knows (or should have known) it was incapable of proving at the time the complaint was filed.

*Id.* (citations omitted). The rationale of *Juarez* is accepted here. Thus, the question is whether there is a genuine issue of material fact as to whether defendants knew or should have known that they were incapable of proving their claim at the time the complaint was filed.[6]

The evidence Vance relies on is insufficient to create a triable issue of fact. First, Vance

---

[5] In *Juarez*, 2015 WL 4764226, at *3, Judge Zagel summarized the plaintiffs' argument as

> that PRA, a debt collector, filed a lawsuit against Plaintiff, a consumer, based on unverifiable information that it could not, and never intended to, substantiate and prove at trial. Plaintiff alleged that PRA, with the intention of harassing and deceiving Juarez into thinking it had legal recourse to the alleged debt, made a material misrepresentation that PRA (1) owned the GE account and (2) could demonstrate the accuracy of the information contained in the complaint. Plaintiff has since abandoned its claim regarding whether Defendant actually owned the Plaintiff's debt as immaterial, but maintains that Defendant made a false representation about its intent and ability to prove its case at trial that is in violation of the FDCPA.

[6] In this sense, Vance's citation to *Samuels* v. *Midland, LLC*, 921 F. Supp. 2d 1321 (S.D. Ala. 2013), squares with the prevailing law among courts in this district. *Samuels*'s focus on the intent to obtain evidence, however, appears to miss the mark because such intent does not undercut a debt collector's good faith basis for its claim. Further, as Judge Tharp recognized in *Lena*, 2015 WL 4692443, at *5 n.7, *Samuels* itself was uncertain as to whether the allegations of the complaint stated an FDCPA claim. *See Samuels*, 921 F. Supp. 2d at 1331 ("The Court does not by this order definitively resolve whether the Act provides the plaintiff a cause of action. Instead, the Court rules only that the defendant has not demonstrated that no such cause of action exists. The Court has and expresses no opinion whether the defendant could have done so by presenting different or stronger arguments, though the defendant remains free to try on motion for summary judgment.").

argues that he survives summary judgment because defendants knew upon filing the suit the two reasons it noted for dismissing the case—that Vance received disability income and that the state court judge was difficult. (*See* dkt. 58 at 5.) Second, Vance argues that defendants still have not produced a bill of sale relating to the subject account and that would make it difficult for defendants to prove their case in state court. (*See id.* at 5–6.)[7]

Both of these facts might weigh against defendants were the issue whether defendants intended to prove the case if necessary, but the question is whether defendants were incapable of proving their claim at the time the complaint was filed. Defendants had the following: Before the suit was filed Vance stated that he had money to pay the debt, implicitly admitting he owed the money (as he now also admits) and, further, while defendants have been unable to produce a bill of sale directly connected to his debt, they have produced their sales agreement with GE and the load file containing Vance's debt, and they have attested that PRA did in fact purchase the debt. (Defs.' LR 56.1 ¶¶ 1–5; *Id.*, Ex. B ¶ 12.)

In *Juarez*, the court concluded that the plaintiff had "failed to establish any evidence that demonstrates that, at the time it filed its complaint, PRA did not have and could not obtain sufficient documentation to prove its collection case, even if it would be difficult to do so without a bill of sale." *Juarez*, 2015 WL 4764226, at *4.[8] Here, the court finds at a minimum

---

[7] Vance makes what appears to be a related but undeveloped argument when he writes, "However, under the terms of the Purchase and Sale Agreement to which PRA claims it purchased the subject account, PRA must submit any request for additional account documents under the procedure set forth in Exhibit B to the agreement." (Dkt. 58 at 6.) The court is not entirely clear what to make of this sentence. Nevertheless, merely having difficulty obtaining documents does not speak to whether defendants lacked a good faith basis for their claim.

[8] Vance also seems to argue that the account notes show that defendants never intended to go to trial. (*See* dkt. 58 at 4–5.) Even if the assertion were supported by the record, Vance is simply pursuing the wrong inquiry when he argues that defendants intention to try the case is relevant.

that no reasonable jury would conclude from this evidence that defendants knew or should have known they could not prove their case. As such, there is no triable issue of fact.

### 2. Defendants' Misrepresented That They Would Pursue Their Collection Case

Vance's separate basis for his FDCPA claims is that Polk misrepresented to Vance on August 27, 2013, that FRA would no longer be pursuing the collection case against him. The Seventh Circuit has so far declined to address "whether § 1692e covers the process of litigation." *See Beler* v. *Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007). Defendants have cited out-of-circuit case law to argue that the FDCPA is not implicated once litigation begins because the debtor will be adequately protected by the court system. *See Simmons* v. *Roundup Funding, LLC*, 622 F.3d 93, 96 (2nd Cir. 2010) ("While the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers." (quoting *B-Real, LLC* v. *Rogers*, 405 B.R. 428, 432 (M.D. La. 2009)).

It stands to reason, however, that certain behavior during the course of litigation could result in liability under the FDCPA. For example, a situation in which a debt collector intercepts a debtor outside a courtroom and tells the debtor that their case will be dismissed so the debtor may go home but then enters the courtroom and moves for a default judgment. Such conduct would be a misrepresentation in connection with collecting a debt and thus proscribed by the FDCPA. *See Riley* v. *Portfolio Recovery Assocs., LLC*, No. 14 C 9819, 2015 WL 1594298, at *3 (N.D. Ill. Apr. 7, 2015) ("It is well-established among the judges in this district that '[a] valid FDCPA claim exists if a defendant makes a false or misleading statement relating to the collection of a debt whether the statement was made in a state court complaint or during state court litigation.'" (quoting *St. John*, 2014 WL 3377351, at *3)).

10

Although an allegation of such conduct would survive a motion to dismiss, on summary judgment more than an allegation is needed.[9]  Vance's evidence is (1) stating what Polk said to him, (2) noting that he did not remember what Polk said to him, but his impression was that the debt would go away, and (3) admitting that he may have simply been confused by the meaning of the statement.  Although this is a scintilla of evidence, it is insufficient to create a genuine issue of material fact.  First, Vance admits that ultimately he does not remember what Polk said to him; he remembers only what he took away from the conversation.  Without evidence of what Polk actually said, Vance is not able to rebut Polk's denial that he misled Vance.  As with speculation, a vague recollection "does not create a genuine issue of fact; instead, it creates a false issue the demolition of which is a primary goal of summary judgment." *United States* v. *Resnick*, No. 10 CV 3976, 2012 WL 1080221, at *3 (N.D. Ill. Mar. 29, 2012) (quoting *Hedberg* v. *Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995)).

Second, Vance's understanding is not relevant under the FDCPA.  Rather, he must prove what the objective unsophisticated consumer would have understood from the conversation.  *See Turner* v. *J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (noting that the test "for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer" (citation omitted)); *see also Evory* v.

---

[9] In certain parts of his brief, Vance appears to misconstrue the motion to dismiss and summary judgment standards through his citations back to his complaint in support of surviving summary judgment.  (*See* dkt. 58 at 9 ("Plaintiff alleges that PRA routinely files debt collection actions when it knows that it cannot prove its case at trial and even though it does not verify the information contained in its complaints.  *See* Plaintiff's complaint at ¶ 38.  Plaintiff also alleges that PRA dismissed the lawsuit it filed against him because PRA knew that it would not prevail at trial.  *Id,* [sic] at ¶51."), 10 ("The *Samuels* and *Kuria* courts represent two specific cases where a claim like Plaintiff's was not dismissed at the pleadings stage.").)  Similarly, at one point in his brief, Vance suggests that he should survive summary judgment because defendants have not produced "irrefutable evidence" of ownership.  (*See id.* at 3.).  In making this argument, Vance appears to fail to recognize that while defendants bear the burden on summary judgment, he bears the burden of proof on his FDCPA claim.

*RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) (noting that it is neither the court's impression nor the subjective impression of the particular debtor that is relevant). That consumer is a "person of modest education and limited commercial savvy." *Evory*, 505 F.3d at 774. As the court noted in *Evory:* "[A] plaintiff cannot withstand summary judgment just by presenting his affidavit that *he* was confused. He must show that he is representative of the protected group." *Id.* at 774 (citations omitted). Although the preferred type of evidence to make this showing is survey evidence, *see id.* at 776, that is not the only type of evidence that is permissible. Vance, however, has submitted no evidence[10] as to how the reasonable unsophisticated consumer would interpret the statement or that Vance is representative of the reasonable unsophisticated consumer.[11]

### B. Illinois Consumer Fraud and Deceptive Business Practices Act

Under § 1367(c)(3), the court may decline to exercise supplemental jurisdiction when all claims over which original jurisdiction is present are dismissed. *See* 28 U.S.C. § 1367(c)(3) (noting that "[t]he district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court dismissed all claims over which it has original jurisdiction"). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce* v. *Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). For these reason, the ICFA claim is dismissed without prejudice.

---

[10] The only argument that appears in the briefing is that Vance suffered a stroke in 2006. The court, however, does not see how this evidence supports Vance's claim without evidence that Polk knew of it and took advantage of a perceived disability. (*See* dkt. 58 at 3.)

[11] As indicated above, Vance does not specify how his claim might be treated differently under §§ 1692d, 1692e, and 1692f, and he offers no insight as to how his claim may survive under one prohibition but not another. As such, the court must reject his claims under all three.

## **CONCLUSION & ORDER**

Defendants' motion for summary judgment (dkt. 47) is granted as to the FDCPA claim (count I). The ICFA claim (count II) is dismissed without prejudice to refiling in an Illinois court. The case is terminated.

Date: March 30, 2016

_____
U.S. District Judge Joan H. Lefkow